UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JULIE LAINE LIMBAUGH,

    Plaintiff,

v.                                         Case No.:  5:21-cv-96-KCD

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## **ORDER**[1]

Julie L. Limbaugh sues the Commissioner of Social Security under 42 U.S.C. § 1383(c)(3). She seeks review of the Commissioner's decision denying her application for supplemental security income benefits. (Doc. 22 at 1.) For the reasons below, the Commissioner's decision is affirmed.

## I. Background

This case has a long procedural history. Limbaugh first filed for disability benefits in 2016, claiming she could no longer work due to anxiety, post-traumatic stress disorder, a heart problem, hypertension, and an ovarian

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them. The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

tumor. (Doc. 22 at 1.) She was denied benefits but appealed to this Court and won. *See Limbaugh v. Comm'r of Soc. Sec.*, No. 5:19-cv-473 (Doc. 21) (M.D. Fla. Apr. 10, 2020). The Commissioner was directed to reopen Limbaugh's case and "further evaluate the opinion evidence; reconsider the residual functional capacity; [and] if necessary, obtain additional vocational evidence." *Id.*[2]

While her case was being litigated, Limbaugh apparently returned to work. She thus amended her application to a closed disability period—August 2016 to August 2018. (Doc. 22 at 2.) Following a second hearing, the administrative law judge again denied Limbaugh's request for benefits. (*Id.*)

To make this determination, the ALJ followed the multi-step evaluation process established by the Commissioner. *See* 20 C.F.R. § 404.1520(a). The ALJ found that although several of Limbaugh's impairments qualified as severe, she retained the residual functional capacity to perform light work with postural limitations. (Tr. 730.) The ALJ also found that, mentally, Limbaugh was limited to performing simple tasks and making simple work-related decisions. (*Id.*) These limitations prevented Limbaugh from performing any past relevant work. Still, according to the ALJ, she could perform other work in the national economy as a garment bagger, folder, and marker. (Tr. 735-36.)

---

[2] Unless otherwise indicated, all internal quotation marks, citations, and alterations have been omitted in this and later citations.

Thus, Limbaugh was not disabled as that term is defined in this context. (Tr. 736.)

This appeal concerns the ALJ's assessment of Debra Gatlin, a nurse practitioner that Limbaugh treated with. Gatlin reported that Limbaugh presented with a history of PTSD due to an abusive relationship in a 30-year marriage. After several treatment sessions, Gatlin completed a mental capacity assessment form, where she stated that Limbaugh suffered from PTSD, adjustment disorder with anxiety, and the effects of being a victim of domestic violence. (Tr. 482.) Gatlin found that, primarily due to her PTSD, Limbaugh's concentration was "very limited," her memory was impaired, especially when encountering stress, and that she could not function in stressful environments. (Tr. 484.) Gatlin ultimately opined that Limbaugh had no useful ability to respond appropriately to changes in the work setting and had marked limitations in social interaction and in sustained concentration and persistence. (Tr. 483-84.)

In deciding Limbaugh's residual functioning capacity, the ALJ gave Gatlin's opinions "little weight." (Tr. 734.) The ALJ explained that Gatlin's assessment was not supported by the medical evidence, including her own treating notes. Among other issues, the ALJ observed that Limbaugh frequently stopped taking her prescriptions. (Tr. 734.) The ALJ's logic being that Limbaugh's mental limitations were explained by a lack of medication,

3

which could be overcome and allow her to work. The ALJ also outlined Limbaugh's treatment history, which included mental assessments that juxtaposed the marked and extreme limitations found by Gatlin. (*See* Tr. 732.)

Limbaugh bypassed written exceptions, rendering the ALJ's decision as final. *See* 20 C.F.R. § 416.1484(c)-(d). This appeal followed.

## II. Standard of Review

A court's review of a decision by the Commissioner is limited to whether substantial evidence supports the factual findings and whether the correct legal standards were applied. 42 U.S.C. § 1383(c)(3) (incorporating § 405(g)); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The "threshold for such evidentiary sufficiency is not high." *Id.*

If substantial evidence supports an ALJ's decision, a court must affirm, even if other evidence preponderates against the factual findings. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). The court may not decide facts anew, re-weigh evidence, make credibility determinations, or substitute its judgment for the Commissioner's. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

### III. Analysis

This appeal concerns the treating source rule. (Doc. 22 at 15-16.) When Limbaugh applied for benefits, administrative law judges were instructed to defer to a claimant's treating medical providers "unless there was good cause not to." *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 896 (11th Cir. 2022); *see also Choquette v. Comm'r of Soc. Sec.*, 695 F. Supp. 2d 1311, 1329–30 (M.D. Fla. 2010) ("Absent good cause, the opinions of treating physicians must be accorded substantial or considerable weight."). Courts have found good cause to reject a treating source's medical opinion when: (1) it is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with her own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004).[3]

Limbaugh argues the ALJ failed to follow the above regulations. According to Limbaugh, "Gatlin's opinions should have been given controlling weight" because they "were both well-supported by medically acceptable clinical examinations and were consistent with the other substantial [evidence] in the record." (Doc. 22 at 22.) And this was harmful because Gatlin found marked limitations in several areas of mental functioning. (*Id.* at 22-23.) Put

---

[3] The Social Security Agency has done away with the treating source rule. But here the parties agree that the laws and regulations from 2016 (when Limbaugh first applied for benefits) controls. (*See* Doc. 27 at 7.) The Court will follow suit.

simply, had the ALJ not rejected Gatlin's opinions, the evidence would have supported (if not required) a disability finding. (*Id.*)

The problem with Limbaugh's argument is simple—Gatlin is not a treating medical source whose opinions are entitled to deference. *See* SSR 06-03P (S.S.A. Aug. 9, 2006); *see also Reese v. Saul*, 533 F. Supp. 3d 1061, 1069 n.4 (M.D. Ala. 2020) ("Pursuant to Social Security regulations, nurse practitioners are not considered accepted medical sources."); *Deandrea v. Berryhill*, No. 8:17-CV-2195-T-AEP, 2019 WL 1376520, at *7 (M.D. Fla. Mar. 27, 2019) ("[A]lthough an ALJ should consider opinions from nurse-practitioners, an ALJ need not afford such opinions controlling or significant weight.").

Thus, contrary to Limbaugh's claim, the ALJ was not required to articulate good cause to reject Gatlin's opinions. *Sarli v. Berryhill*, 817 F. App'x 916, 918 n.1 (11th Cir. 2020); *Erway v. Colvin*, No. 8:14-CV-1803-T-24 EA, 2015 WL 4770166, at *1 (M.D. Fla. Aug. 12, 2015); *see also Griffie v. Colvin*, No. 2:14-CV-1991-CLS, 2015 WL 6170733, at *2 (N.D. Ala. Oct. 21, 2015) ("[A]n ALJ does not have to demonstrate good cause in order to reject the opinion of a treating nurse practitioner[.]").

Not that the ALJ could ignore Gatlin. "Even though a nurse practitioner is not an acceptable medical source, an ALJ must still take into account all of the evidence, including the evidence authored by non-acceptable sources."

6

*Torres v. Colvin*, No. 3:13-CV-1385-J-JRK, 2015 WL 1064639, at *6 (M.D. Fla. Mar. 11, 2015). "Social Security regulations provide that the opinions of other medical sources, such as [a nurse practitioner], must be considered by the ALJ when evaluating the opinions of acceptable medical sources." *Barrios v. Colvin*, No. 14-24189-CIV, 2016 WL 3964815, at *4 (S.D. Fla. Mar. 18, 2016). But that didn't occur here either.

The ALJ considered Gatlin's opinions and evaluated them in conjunction with Limbaugh's other treatment records, ultimately concluding that Gatlin's assessment was not persuasive. Among other issues, the ALJ noted that Limbaugh's mental impairments were managed with medication. (Tr. 732.) And more than once, she reported this treatment was working. (Tr. 536, 551, 554, 939, 942.) Nevertheless, Limbaugh testified that *she was not taking psychotropic medications* during the requested period of disability despite them being prescribed and available. (*Compare* Tr. 755, *with* Tr. 536.) That alone was enough for the ALJ to discount Gatlin's conclusions. To state the obvious, if Limbaugh was not taking her medications how could Gatlin's functional assessment be accurate. *See, e.g.*, *Oliver v. Comm'r of Soc. Sec.*, No. 6:18-CV-1917-ORL-DCI, 2020 WL 418871, at *5 (M.D. Fla. Jan. 27, 2020) ("[T]he ALJ may rely on a claimant's refusal to follow prescribed medical treatment.").

7

The ALJ also found it significant that Limbaugh's treating physician (and Gatlin's boss) did not endorse Gatlin's report. And his treatment notes provide that Limbaugh's insight, judgment, and memory (both immediate and past) were good. (Tr. 734.) The above evidence, although apparently not enough for Limbaugh, is sufficient for the Court to conclude that a reasonable mind *might* agree with the ALJ. And that is all the law requires. *See Biestek v. Berryhill*, 139 S. Ct. at 1154.

Limbaugh spends much of her brief laboring to show that Gatlin's opinions are more consistent with the record. But her arguments essentially ask the Court to reweigh the evidence, which is not allowed. "Resolution of conflicts in the evidence, including conflicting medical opinions and determinations of credibility are not for the courts; such functions are solely within the province of the Secretary." *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973).

Finding no error with the ALJ's decision to discount Gatlin's opinions, which is the only argument on appeal, the Commissioner's ruling must be **AFFIRMED**. The Court thus directs the Clerk to enter judgment for the Commissioner and against Julie L. Limbaugh and close the file.

**ORDERED** in Fort Myers, Florida this August 31, 2022.

_____
Kyle C. Dudek
United States Magistrate Judge

Copies: All Parties of Record